**3:21-cv-00033-DJN**

Ryan Anderson                                         Page 1
2438 Lancraft Rd,
North Chesterfield, VA, 23235
1 (804) 397-5436
ryan.anderson772@icloud.com

Plaintiff - Ryan Anderson

v.

Defendant - Jason W. Pollard

Plaintiff's Name, Address, and Phone Number

Ryan Anderson
2438 Lancraft Rd,
North Chesterfield, VA, 23235
1 (804) 397-5436
ryan.anderson772@icloud.com

Defendant's Name Address, and Phone Number

Jason W. Pollard
4704 South 85th East Ave,
Tulsa, OK 74145
1 (918) 728-9461
jwpollard20@gmail.com

## Jurisdiction and Venue

Page 2

1. Jason W. Pollard, defendant, lives and resides in Tulsa, Oklahoma apparently at 4704 South 85th East Ave, Tulsa, OK 74145. He used to reside in Chesterfield County, Virginia.

2. Ryan Anderson, plaintiff, lives and resides in Chesterfield County, Virginia.

3. Being a car-less citizen, I will need accomodation. Jason Pollard will need to be extradited to Richmond or we will both have to speak in our respective states federal courtroom (or we do it by all in writing, by phone, etc) This is a diversity case. The amount in controversy exceeds $75,000. The plaintiff is seeking to recover 90% of the defendants assets and a $320,000.00 a year annuity for 42 years, or about $15,060,000 dollars.

## Statement of Facts          Page 3

1. Ryan Anderson, plaintiff, and Jason Pollard, defendant, were friends starting in 1989.

2. Betsy Cutler Knapp was Jason Pollard's girlfriend and wife till on or about January 1, 2010, when he left her for a different woman, apparently Corri Pollard. She was a valued friend of Ryan Anderson starting in 1995, and both planned to stay that way.

3. In 2000, Jason and Betsy lost Ryan's phone number AND Ryan Anderson lost Jason and Betsy's phone number. Both had new addresses unknown to each other.

Page 4

4. Knowing they were to be permanent friends, Ryan and Betsy looked for each others number. Jason did not. Ryan tried 411 and the Phone book to no avail. Betsy got on the internet and found Newell J. Anderson - Nationwide Insurance, which is Ryans father. She asked Jason if this was Ryans Dad (to get my phone number) which he should have known, but he yapped at Betsy "I think it is, I DON'T KNOW!" So she asked him again and again for her friend for 5 years (2000-2005) and as she told me, he just "grunted" her away. This kept us apart unnecessarily, for 15 years

Page 5

it turns out, and that does constitute the grounds for personal injury right here, I'm going to ask you to imagine a couple fit analogies and I am going to hold you to your answer because I Know that is fair for justice's sake. Imagine a Mr. X is your friend and you've never done anything wrong to him, What happens is Mr. X finds a way that does work (and does it, too) that will prevent you from enjoying and using at all for 15 to 20 years these items, newspapers, magazines, pictures, radios, stereos, computers, iphones and the like, and televisions and movie screens.

Page 6

The 15 to 20 years elapses and you were without them that whole time. Now you find out his address and the cops and the courts know it too. He's currently worth $400,000 to 4 million dollars, one only reason to thank for it was his ownership of computer with internet day after days those 15 to 20 years.

Does he owe you zero dollars?
Yes or No?

For a second frt analogy, you simply add a friend's company and that friend was to be later a lover for an amount of time and he made you miss it.

Now again, does he owe you zero dollars?
Yes or No? Tell me in writing if your answers

Page 7

were no and no (or any other combination),
You should see the point of my lawsuit
right here,
5. In 2010 Jason left Betsy for
apparently Carri Pollard, his current
wife, he seems to have had two sons
with. He failed to correct his error
about deceiving Betsy as to my whereabouts,
With my number, Betsy would have called
me to cheer her up and we would have
entered a relationship, but we both
had to miss out,
6, I got on Facebook about 2013 and had
to wait for Betsy to show up, which she

Page 8

did in about 2015, She gave me Jason Pollard's email address, I wrote to him twice, he replied (too briefly) once, then he entirely dysfunctioned as I wrote him about 100 times and he replied zero times. This was very stressful because I felt I deserved communication lines open. Betsy and I talking about things even said at the exact same time on the phone "I don't know what to do about Jason," implying 2 people agreed he was acting wrong about his situation, I called him by phone about 50 times and he answered

Page 9

only once, but he rushed off the phone and included backwards blame I did not deserve,

7. A seperate mention I probably should make is that in 1992 Jason sold ~~pot one year~~ then stopped for good, making $50,000.00 cash. He told me directly that he put an amount of this into stocks (i.e. 20,000 dollars that is worth $200,000 dollars today) The reason I mention this is that he owns this "gift" and yet argued to pay the one (or ones) that he hurt in life

Page 10

nothing,

8. In an incident indicative of his courtroom behavior perhaps, Betsy had paid bills for Jason and Betsy (to share 50/50) related to the marital house, Betsy was _honest_ and _had proper memory_ and tried to collect her half. As Betsy told me she simply was telling the truth and "he made me go get my parents" and finally got him into court (in Montgomery County or Blacksburg, VA) where she won.

9. A second incident where Jason was _dishonest_ with _no proper memory_ was my previous filing (this is

Page 11

a refiling of case 4:18-cv-00582 and 3:18-cv-686 on November 8, 2018, which Jason Pollard weaseled out of wrongly by perjury or lying to the court and amnesia to the facts which should not have been accepted by any means. The Judge Payne and Judge Frizzell unfortunately accepted it and I have to argue it is an error of impurity. Remember about your answers to my analogy. Also, I am sure by knowing how work goes that your Honors are overworked and are expected to read more cases than is humanly sane or possible because of "work hard" practices So that should be the reason for your Honors

Page 12

overlooking my case, so my heart goes out to those for that tough part about it, all it applies.

10. Betsy Ann Cutler Knapp agrees with me sincerely that Jason Pollard should pay off his guilt in this situation. It is only logical. I know Betsy as a level-headed friend that would only state the smart (and sown) peoples consensus.

11. Last time I filed, Judge Payne wrote that I filed "for the purpose of harrassment and vexation." Your Honor, I don't know how this was imagined but this is NOT TRUE,

Page 13

and could not be farther from the truth. My intentions are clean and I was truly hurt by his (the defendants's) actions. At the EXACT same time he (the Judge) denied my request for a court-appointed lawyer, so I need a reevaluation of my application for a court appointed lawyer - my case is valuable enough to merit one.

12. Bad effects of Mr. Pollard not paying his dues included that I was not able to <u>attend</u> my girlfriend who was trying to quit smoking like me,

Page 14

I mean she would have helped me.
Studies show men do better (safer)
with this. People should have possession
of all rightful resources (including
conscientious debts) when they are
trying to save their health. I also
both needed a car to service against my
diabetes (the gym) and for better stuff
to do (than smoking) and to leave my
transient, vocally harrassful neighbors
when they were particularly stuck on
being rude (to cool things off). I also needed
a wallet holding butler service so I could shop
and avoid smoking; None of these were possible
with Jason Pollard evading a debt he shall of owed

Page 15

Up to,

13, I mention Jason took me to a
$19,000 dollar rip off when I was 19 years old
without checking with me or my Mom,
and that place was sued and lost not
bankruptcy shortly thereafter. That
amount saved on that seen through business
would be worth $190,000 dollars today.
This was a 1992 incident,

14, Back to the future and the main mistakes,
Jason needed to pay for his mistake - a
fair amount - so then I could spend on
my startups which included one in 2002,
and more. But he was wrong to me 2000 - 2020
and skipped being fair, which caused opportunity
loss, I had an imminent business (a 2002 blog

Page16

that should have and could have taken off starting in 2002 (and it still may if I do it today) but damage has been done and it is opportunity loss (2002 to present). There are more websites I would like to add but must wait on initial outlay, and I fairly blame my debtors. There was another goal I meant to promote (starting in 2002) that would've helped against people hearing disgusting talkers more efficiently but that too was compromised. I would like to start my work now with a fair settlement.

Page 17

15. Count I - intentional emotional
          abuse and breach of
          moral duty

The defendant, Jason Pollard, committed
intentional emotional abuse and breach
of moral duty. Your Honor, people's lives
basically have five basic concerns -
1. Family 2. Friends, 3. lovers/wife,
4. career/chores, 5. personal time/leisure
(ie movies, television, hobbies, etc.) and none
of these five concerns should be personally
injured. The problem with the defendant
is that he negatively affected too many
of these five concerns when he should
have known the outcome would be painful.

Page 18

Your Honor, if a man could keep you from watching TV for 15 years (and did so, too) you would have to argue that the deed was an outrage to a majority of people and therefore qualifies as intentional emotional abuse. The defendant, through lying about my whereabouts, despite Betsy's repeated requests for me, kept me away from a close best friend for 15 years which also lost a lover and possibly wife and childbearer.

Also, I mention that if you get on the internet and type in intentional emotional abuse it lists the four elements of IIED and they are 1. The Defendant

Page 19

acted intentionally or recklessly and 2,
Defendants conduct was extreme and
outrageous and 3. Defendants act was
the cause of the distress and 4. Plaintiff
suffers severe emotional distress as a result
of defendants conduct, In discussing
the 1st element it reads: "Intentional
or reckless act - It is not necessary
that an act be intentionally offensive,
A reckless disregard for the likelihood
of causing emotional distress is sufficient,
For example, If a defendant refused to
inform a plaintiff of the whereabouts
of the plaintiff's child for several years,

Page 20

though the defendant knew where the child was the entire time, the defendant could be held liable for IIED even though the defendant had no intent to cause distress to the plaintiff.

The fact that the only example given in IIED on the internet is about the defendant lying about whereabouts of a valuable person to the plaintiff I believe gives credibility to my case Whether the most cherished person was a child or close best friend (lover) possibly wife and childbearer I feel you must

Page 21

treat equally, or this would be discriminatory.
   The article also states " The conduct
must be heinous and beyond the standards
of civilized decency or utterly intolerable
in a civilized society, Whether the
conduct is illegal does not determine
whether it meets this standard.") I
already explained how extreme his effect
was in analogies on page 5 and page 6.
   The article goes on to say " Some
general factors that will perswade that
the conduct was extreme and outragious
(1) there was a pattern of conduct, not
just an isolated incident, (2) the plaintiff

Page 22

was vulnerable and the defendant knew it, (3) the defendant was in a position of power (4) racial epithets were used, and (5) the defendant owed the plaintiff a fiduciary duty. The defendants actions were a pattern of conduct, happening at least five times from 2000 to 2005 and the effect was not isolated but it kept growing in effect, such as in 2010 when he left Betsy and I was supposed to be there. Also the plaintiff was vulnerable and the defendant knew it and the defendant was in a position of power such as when his

Page 23

lies about my whereabouts were working
so he kept doing them year after year
when **I needed** him to connect me to
her. And he also did(S) about owing
the plaintiff a fiduciary duty, which
is an obligation to act in the best interest
of another party, usually financial but not
always so. When Betsy wanted her close
best friend (me) and **I** was waiting for her
too, he owed to help the reconnection.

   The article goes on to the subject
of Qualification, It reads : " The emotional
distress suffered by the plaintiff must be
"severe", This standard is quantified by the

Page 24

intensity, duration and any physical manifestations of the distress.

A lack of productivity, or a mental disorder, documented by a mental health professional, is typically required here, although an acquaintances' testimony about a change in behavior could be persuasive," I point out that my mother discussed with my psychiatrist how I was not keeping friends in my life and was too isolated, and this was because my best friend that was male died when I was 23 and because the defendant was keeping Betsy away from me,

Page 25

Count 2 - perjury/lying to the court
which also caused opportunity
loss

The defendant filed a motion to dismiss over my first filing against him, The problem with his answer is he blatantly lied and failed to acknowledge his faults over Betsy Cutler Knapp, I pointed out his money laundering which leaves him with an extra $200,000 in stock in his ownership but he denied it was true, which is untrue and is lying to the court, Secondly, he tried to claim that "he simply withdrew his friendship" leaving out the fact that he

Page 26

withdrew Betsy's friendship against her wishes. He used these deceptions to get the case dismissed with out prejudice. The problem here is that by lying he delayed a speedy fair trial which would have resulted in a settlement which I could have used to startup a business I already have planned, so there was opportunity loss involved. Also, Betsy Cutler Knapp is also somewhat of a computer genius, so by keeping her away from me I lost needed advice. With advice and a settlement my business could have started as soon as 2002 (which is when my content for the business came into existence).

Page 27

I also had health problems that could have been attended to if he had not wrongfully delayed the case by lying. I have diabetes which needed gym attendance by car, among other health problems, so there was opportunity loss that was health related, too.

### Reminders/Instructions

Please DO NOT dismiss for statute of limitations, failure to state a claim, or for failure to sign/frivolous claim. This lawsuit was originally filed on time with mistakes from the year 2008 to 2008 allowable due to the discovery rule. This second lawsuit is still allowable

Page 28

due to the fact that the last intentional emotional abuse occured on or about January 2, 2020 when he still would not answer a single phone call/text message. Also he lied February 13, 2019 in his answer to my lawsuit.

The grounds for the suit are the Federally recognized wrongdoing of intentional infliction of emotional distress (IIED) and perjury/lying to the court which also caused opportunity loss. My signature is at the end of this paper and my charges are not frivolous – there was tangible injury from his wrongdoing.

## Remedy and Damages   Page 29

I request a trial by jury.

I request an ALL IN WRITING trial as it is less safe (comms) to travel by taxi (my only means to attend) (Phone is Allright)

I'd like Your Honor to serve the defendant with the summons, complaint, and request for admissions and interrogatories, at the same time. The plaintiff is seeking to recover $15,060,000 dollars from the defendant. The plaintiff suffered mental anguish, loss of companionship of a friend and lover and possibly wife, and opportunity loss including health care opportunity loss.

Page 30

I remind the court that the defendant has $200,000 dollars cash from drug dealing gains I feel he MUST GIVE UP, and there's no reason he should not give it up to whom he hurt in life, which was myself. He also cost me $190,000 dollars by taking me to a fraudulent Charter Westbrook Hospital that was sued into bankruptcy shortly after he took me there in 1992, So he should reimburse that as another minimum.

I attest that all information contained herein is true to the best of my knowledge

Ryan Anderson
2438 Lancraft Rd,
North Chesterfield, VA 23235
(804) 397-5436
ryan.anderson772@icloud.com

_Ryan Anderson_
Signature

_1-14-2021_
date